**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **Louis D. Brown, III,** | ) | **CASE NO.  1:05 CV 2974** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **City of Cleveland,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendant.** | ) | |

<u>**Introduction**</u>

This matter is before the Court upon defendant's Motion for Summary Judgment.  For the following reasons, the motion is GRANTED.

<u>**Facts**</u>

Plaintiff, Louis D. Brown, III, initiated this action with the filing of a *pro se* Complaint against defendant, City of Cleveland (hereafter, the City or defendant).  Plaintiff subsequently retained counsel and filed an Amended Complaint against the City and Julius Ciaccia.  Mr. Ciaccia was dismissed by this Court after plaintiff failed to serve him.

Plaintiff alleges that he is African American and was born in 1959.  While the Amended Complaint does not set forth any separate counts for relief and includes a paragraph

1

alleging numerous statutory bases for his claims, the parties subsequently submitted a stipulation to this Court identifying the claims as follows: plaintiff alleges sex and age discrimination based on the denial of a promotion; plaintiff alleges sex discrimination based on the denial of a handicap parking space; plaintiff alleges retaliation based on his engaging in union activity and exercising his First Amendment rights; and plaintiff alleges hostile work environment based on race, sex, age and for exercising his First Amendment rights.[1]  While the stipulation does not mention them, the Amended Complaint also alleges negligent and intentional infliction of emotional distress as well as slander and libel.

Plaintiff began his employment with the City in 1990 with the Division of Water of the City's Department of Public Utilities as a Water Pipe Repairman.  In 2001, plaintiff received disability retirement from the City because of congestive heart failure.  Medication therapy improved plaintiff's condition and he returned to work with the City in 2004. Plaintiff currently works for the City as a Customer Service Representative in the Division of Water.  Plaintiff is a member of the Union whose terms and conditions of employment are governed by a collective bargaining agreement (CBA). (pltf. depo.)

Plaintiff alleges that on July 13, 2004, the City denied him a handicap parking space to accommodate his condition of congestive heart failure while two white females and a black female with less seniority than plaintiff were given handicap parking spaces.

At all times relevant, plaintiff has worked in the City's Public Utilities Building, located at 1201 Lakeside Avenue in Cleveland.  (pltf. depo.)  In January 2004, plaintiff

---

[1]     Plaintiff also alleged disability discrimination claims.  These claims, however, have been dismissed by this Court.

2

applied for a parking space close to this building due to his congestive heart failure.  The

application was accompanied by a request for an ADA accommodation.  (Doc. 49 Ex. M) By

letter of February 19, 2004, Tony Washington, the City's Labor Relations Manager, notified

plaintiff that the Accommodation Review Committee had denied plaintiff's request because

the medical documentation he submitted was insufficient to demonstrate an ADA disability.

(Doc. 49 Ex. P)

On April 21, 2004, plaintiff filed a grievance seeking the following relief: "[F]or

grievant to receive a parking space, for management to cease and desist discriminating against

local 100 members[2] in the assignment of parking spaces..."  (Doc. 38 Ex. 7) Plaintiff further

stated,

> Grievant gave management detail medical information; in order to apply for a parking
> place.  Management ignore the medical information and denied grievant a handicap
> parking spot.  Management has also systematically discriminated against Local 100
> member in the allocation of parking spots.  Management has further violated its own
> EEO policy page 96 I a #1 'The City of Cleveland will provide equal opportunity in
> each and every phase of the City's daily operation to all employees and applicants of
> employment.'

*Id.*

By letter of July 13, 2004, Eric Myles, the City's Labor Relations Officer, denied the

grievance.  (Doc. 38 Ex. 5)  The letter stated that the City's Citywide ADA Committee

reviewed the request for accommodation and denied it.  With regard to plaintiff's allegation

that the collective bargaining agreement had been violated, Myles stated that the contract

contained no provision concerning parking and, therefore, there was no basis for the

---

[2]    In his capacity as a Customer Service Representative for the Division of Water of
the City's Department of Public Utilities, plaintiff is a member of the bargaining
unit represented by AFSCME, Local 100.

3

grievance. Finally, Myles stated that "the Department of Public Utilities' Policy on Parking, of which a copy was provided to you, clearly states that assigned parking spaces for City employees are granted by the appointing authority as a privilege to employees, and that employees shall have no expectation by virtue of his or her employment with the City." *Id.*

William Tell, the City's Chief of the Public Utilities Police Department, avers the following. In 2004, there were approximately 500 people who worked in the City's Public Utilities Building and there were 133 available parking spaces. Of those 133 spaces, 104 of them were located in an employee-only underground covered parking garage and 29 spaces were located on an employee-only uncovered parking deck. None of the 133 spaces were available to the general public for parking. Until 2003, the City offered free parking to all downtown Cleveland employees at its Municipal Parking Lot which has over 20 handicap parking spaces. Bus transportation to the downtown locations was provided. Beginning in 2003, the City was able to offer 215 employees who worked in the City's Public Utilities Building, but who did not possess a parking space at 1201 Lakeside Avenue, additional free parking at a parking location referred to as 1825/Davenport, six blocks from the building. After plaintiff returned to work in 2004, he was twice offered a parking space at 1825/Davenport. He declined both offers. (William Tell aff.)

Plaintiff has also alleged that he was denied a promotion as Deputy Project Director.

On May 1, 2004, the Division of Water posted job openings for four positions including Deputy Project Director (Claims Coordinator). Robin Halperin, Division of Water's Risk Manager, delegated to Brian Burre, Safety Manager, the duty of evaluating the applicants and recommending to Halperin the individual to fill each of the openings.

4

Thirteen resumes, including that of plaintiff, were received for the Claims Coordinator position, 8 of whom were chosen to be interviewed.  Plaintiff received an interview.  Burre selected Dorlisa Threat (female, age 33) as the person best suited to fill the position. (Brian Burre aff.)

Burre did not recommend plaintiff for the position because he did not consider plaintiff's degree in Black Studies to be a closely related field to the Claims Coordinator position; he did not consider plaintiff's Water Pipe Repairman or Customer Service Representative positions to be closely related work experience; plaintiff's level of involvement and commitment to his Union weighed against his ability to be a strong management advocate and his ability to work with the management team; plaintiff had less than excellent communication skills; plaintiff lacked work experience administering claims or programs; typographical and grammatical errors in plaintiff's cover letter and resume showed poor written communication skills; plaintiff demonstrated "an overtly anti-management viewpoint during his interview"and made comments that caused Burre to question his ability to be a professional oral advocate for the City's position regarding denial of workers' compensation claims. *Id.*

Burre recommended Threat for the position because of her prior related experience with the City's Water Division as well as with three previous employers, her strong investigative and analytical skills and her excellent written and oral communication skills. *Id.*

After Burre recommended Threat for the position, Halperin conducted a second interview of her and concluded that Threat was qualified for the position.  Halperin offered Threat the position and she accepted.  (Halperin aff.)

5

Plaintiff thereafter filed this Complaint and the matter is now before the Court upon defendant's Motion for Summary Judgment.

### **Standard of Review**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial.  If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th

6

Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

### **Discussion**

### **(1) denial of promotion**

Plaintiff alleges sex and age discrimination based on the denial of a promotion to the position of Deputy Project Director (Claims Coordinator).  Defendant argues that plaintiff cannot establish a prima facie case or pretext.  For the following reasons, this Court agrees.

To establish a prima facie case for failure to promote based on sex or age discrimination, plaintiff must show that (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job instead.  *See Plumb v. Potter*, 2007 WL 43268 (6th Cir. Jan. 5,

2007) (citations omitted).

Both parties fail to acknowledge, however, that this is a reverse sex discrimination claim.  The Sixth Circuit has made clear:

> A reverse-discrimination claim carries a different and more difficult prima facie burden. A plaintiff in a reverse-discrimination claim has established a prima facie case upon showing that 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority ... and upon a showing that the employer treated differently employees who were similarly situated but not members of the protected group.' *Yeager v. Gen. Motors Corp.*, 265 F.3d 389, 397 (6th Cir.2001)

*Briggs v. Potter*, 463 F.3d 507, 517 (6th Cir. 2006)

If the plaintiff is successful in establishing a prima facie case, the employer bears the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment decision. *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 377 (6th Cir.2002). At this stage and throughout, the burden of persuasion remains with the plaintiff. *Id.*   The burden then switches back to the plaintiff to identify admissible evidence sufficient to create a genuine issue of material fact as to whether the employer's proffered reasons are pretextual. *Id.*

Claims based on state law are analyzed in the same manner as those asserted under Title VII and the ADEA.  *Bolander v. BP Oil Company,* 128 F.Appx. 412 (6th Cir. 2005).

Plaintiff has not produced a shred of evidence that defendant is the unusual employer who discriminates against men.  On this basis, summary judgment is appropriate on the reverse sex discrimination claim because plaintiff fails to satisfy the prima facie burden.

Additionally, as to both the sex and age claims, defendant asserts that plaintiff was not qualified for the Claims Coordinator position.  Defendant's job posting for this position stated the minimum qualifications:

8

- bachelor's degree in a closely related field from a four-year accredited college (two years of experience may be substituted for each year of lacking education)

- two years of full time, progressively responsible experience administering occupational safety and health, workers compensation, or a similar program

- strong investigative and analytical skills are a must

- intermediate computer proficiency including Word, Excel, Access and PowerPoint

- excellent communication skills

- familiarity with workers' compensation regulations and procedures (Ohio)

- familiarity with medical diagnosis, treatment plans, and terminology

- ability to work a flexible work schedule as dictated by operational needs

- valid Ohio drivers' license

(Doc. 37 Ex. 42)

Brian Burre attested to the reasons that he did not recommend plaintiff for the position. Burre did not consider plaintiff's degree in Black Studies to be a closely related field. Nor did he consider plaintiff's Water Pipe Repairman and Customer Service Representative positions to be closely related work experience. Plaintiff did not have two years of full time, progressively responsible experience administering occupational safety and health, workers compensation, or a similar program. Plaintiff's level of involvement and commitment to his Union weighed against his ability to be a strong management advocate and his ability to work with the management team, and he showed an overtly anti-management viewpoint during his interview. Finally, plaintiff had less than excellent communication skills, and typographical and grammatical errors in plaintiff's cover letter and resume showed poor written communication skills. Comments made by plaintiff during the interview caused

Burre to question plaintiff's ability to be a professional oral advocate for the City's position. (Burre aff.)

Burre also attested to the reasons he considered Dorlissa Threat to be more qualified than plaintiff.  Burre recommended Threat for the position because she had administrative and claims coordinating work experience as evidenced by her four years in the Water Division's personnel department dealing with the City's and/or Water Division's personnel policies and procedures and her pre-City of Cleveland employment coordinating administrative bankruptcy matters for Chase Manhattan for four years, serving as an administrative office manager for Sabraien M. Haygood & Associates for 9 months and handling administrative collections matters for Javitch, Block, Eisen & Rathborn for four years.  She had strong investigative and analytical skills acquired during her time as a bankruptcy coordinator.  She had excellent written and oral communication skills as evidenced by Burre's dealings with her prior to the job posting, and in her cover letter, resume and interview.   While Threat did not have the minimum education requirement (as plaintiff did) as she only possessed a high school diploma, Burre concluded that she satisfied the alternate administrative work experience requirement.  (Burre aff.)

Plaintiff asserts that he was much more qualified than Threat because he had earned a four-year degree in African American Studies from The Ohio State University, while the 33 year-old Threat had only a high school diploma.  Plaintiff points out that Ms. Halperin only learned shortly before her deposition that Threat attended two years at Case Western Reserve University during high school as part of a program for minority students, and did not attend that University for two years after high school as part of a college degree.  (Halperin depo.

10

19) Burre, however, has averred that Threat's lack of the minimum education requirement was overcome by her alternate administrative work experience requirement.  The job posting expressly permitted such a substitution as it stated that a bachelor's degree in a closely related field was required and that two years of experience may be substituted for each year of lacking education.

Moreover, plaintiff does not dispute that his degree was not in a closely related field or that Threat had nearly 13 years of related work experience, as set forth in Burre's affidavit.

Plaintiff also contends that he was not given any credit for his workers' compensation and administrative experience. Plaintiff's resume shows that in 1992 he was elected Chapter Chairman of the Union and, at one point, was appointed as the only workers' compensation representative for the Union members.   Plaintiff received a certificate from Cleveland State University in labor relations management for completion of 40 hours of course work, which curriculum included workers compensation.   Plaintiff also received, in 1999, a certificate from the AFL/CIO Workers Compensation Institute.  As defendant points out, however, these do not amount to a bachelor's degree in a closely related field.  Nor does plaintiff argue that these exceed Threat's years of related work experience.  Moreover, plaintiff does not dispute that he lacked the required two years of full time, progressively responsible experience administering occupational safety and health, workers compensation, or a similar program.

Finally, plaintiff asserts that Burre's affidavit testimony that he did not recommend plaintiff for the position because of his extensive Union involvement is prima facie discrimination.  However, the fact that Burre considered plaintiff to have a Union bias is not indicative of discrimination based on sex or age.   Nor does plaintiff dispute that he showed

11

an anti-management viewpoint during his interview.

For the same reasons discussed above as to Threat's qualifications, defendant has asserted a legitimate, nondiscriminatory reason for selecting Dorlisa Threat instead of plaintiff.  Plaintiff fails to present evidence demonstrating pretext.

Summary judgment is warranted on this claim.

**(2) handicap parking space**

In order to establish a prima facie case of sex discrimination under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he was subject to an adverse employment decision, (3) he was qualified for the position, and (4) he was treated differently than a similarly situated individual outside the protected class.  *Vickers v. Fairfield Meidcal Center,* 453 F.3d 757 (6th Cir. 2006) (citations omitted)  If the prima facie case is satisfied, the burden shifting analysis proceeds in the same manner as set forth above in plaintiff's denial of promotion claim.  As stated above, state law claims are addressed in the same manner.

Again, the parties fail to acknowledge that this is a reverse sex discrimination claim.  As plaintiff fails to produce evidence that defendant is the unusual employer who discriminates against men, summary judgment is warranted on this claim.

Moreover, defendant argues that plaintiff has not shown that he has suffered an adverse employment action because he admits that his job duties as Customer Service Representative do not require any driving.  Plaintiff does not dispute this assertion but claims that two doctors have stated that plaintiff needs a close parking space due to his heart condition.  Consequently, he asserts, going to and from his car is a reasonable ADA

12

accommodation.  Plaintiff contends, "The mere fact that the plaintiff's life may be in jeopardy from mere ingress to his job should be enough to allow for the disability claim under the ADA."  (Doc. 49 at 15).  Plaintiff's disability claims, however, have been previously dismissed by this Court.  Having failed to establish a prima facie case of sex discrimination because he has not shown an adverse employment action, summary judgment is warranted on this basis as well.

Defendant further argues that the women to whom plaintiff wishes to compare himself are not similarly situated.

The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated," but to establish that an employee is an appropriate comparator, "the plaintiff [must] demonstrate that he or she is similarly situated to the [claimed comparator] in all relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)

Three women have been identified as being treated more favorably: Cora Jaworski, Linda Alaimo and Patricia Winn. Defendant asserts that none of these women obtained a parking space at 1201 Lakeside as a reasonable accommodation for a disability or requested one on this basis as plaintiff did.

Plaintiff argues that the three women are similarly situated because they work in the same building for the Division of Water, and Jaworski and Alaimo are Customer Service Representatives, like plaintiff.  Plaintiff asserts that none of the women qualify for priority parking under the City's Parking Manual and that the City has admitted that 102 of the 133 available parking spaces at the Division of Water have previously been assigned by prior

13

written or unwritten versions of a parking policy by William Tell's predecessor.

Plaintiff further contends that a conciliation agreement entered into by the City and the OCRC shows the City's disregard for handicapped parking.

In August 2004, plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission (OCRC) claiming, *inter alia,* that the City discriminated against him on the basis of sex when it denied his application for a handicap parking space. (Doc. 49 Ex. U) The City responded to the charge. (Doc. 49 Ex. W) The OCRC determined that the City did not deny plaintiff a parking space on the basis of discrimination, but did determine that the City was in violation of the Ohio Revised Code because it did not have any marked handicap parking spots in its parking lots. A conciliation agreement was then entered into. (Doc. 49 Ex. X, Y)

The OCRC noted, however, that the three comparitors did not have handicap parking spaces. Thus, the conciliation agreement does nothing to show that the City's disregard for handicapped parking was the reason plaintiff was denied a parking space while the three women were given parking spaces. Consequently, plaintiff does not show that he was similarly-situated to any of the three women.

Summary judgment is appropriate on this claim.

**(3) retaliation**

Defendant argues that the federal retaliation claim is barred because plaintiff has failed to exhaust his administrative remedies.

On August 6, 2004, plaintiff filed a dual discrimination charge with the EEOC and OCRC wherein he alleged discrimination on the basis of race, sex and age due to the denial of the promotion and handicap parking space. Plaintiff did not allege retaliation. (Doc. 49 Ex.

14

U) On March 13, 2006, after the Complaint herein was filed, plaintiff filed a second dual discrimination charge with the EEOC and OCRC wherein he alleged, *inter alia,* retaliation. In October 2006, the OCRC issued a "no probable cause" finding.  (Doc. 37 Exs. 45 and 46) The EEOC has yet to rule on the charge.

"It is well settled that a plaintiff must satisfy two prerequisites before filing a Title VII action in federal court: (1) timely file a charge of employment discrimination with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue ('right-to-sue letter')."  *Granderson v. University of Michigan*, 2006 WL 3627023 (6th Cir.Dec. 12, 2006) (citations omitted)

On September 26, 2005, the EEOC mailed to plaintiff its notice of right to sue as well as notification that it had adopted the earlier no probable cause finding of the OCRC. (Doc. 49 Ex. Z) Plaintiff argues that because he  filed his Complaint within 90 days after receiving this notice, his retaliation claim is not barred.  Plaintiff asserts that his Amended Complaint is similar to and relates to the allegations contained in the OCRC/EEOC charge.  For the following reasons, this Court disagrees.

The EEOC/OCRC charge alleged discrimination on the basis of race, sex and age due to the denial of the promotion and handicap parking space.  Plaintiff checked off the boxes marked "sex" and "age."  Plaintiff did not discuss retaliation; nor did he check off the box marked "retaliation."

The Court recognizes that "charges filed with the EEOC should be liberally construed to encompass all charges reasonably expected to grow out of the charge of discrimination." *See Randolph v. Ohio Dept. of Youth Services,* 453 F.3d 724 (6th Cir. 2006).  Plaintiff's

retaliation claim, however, based on his engaging in union activity and exercising his first amendment rights would not be reasonably expected to grow out of a charge that he was denied a promotion and a handicap parking space because he is Black, a male and in a protected age class.  Moreover, plaintiff's more recent EEOC/OCRC charge expressly alleges retaliation based on wrongful disciplinary charges after complaining about the assignment of handicap parking spaces and removal from the City's Diversity Committee.  These specific allegations are made in the Amended Complaint.  Yet, plaintiff does not dispute that the EEOC has not issued a right to sue notice on this latter charge.  He is, therefore, barred from pursuing this claim.

Defendant argues that even if the Court were to reach the merits of this claim, plaintiff's retaliation claim fails.  This Court agrees.

Claims for retaliation follow the same burden-shifting framework set forth above. In particular, to establish a prima facie case, the plaintiff must show that (1) he engaged in a protected activity; (2) the defendant had knowledge of the plaintiff's protected conduct; (3) the defendant took an adverse employment action towards the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. If the plaintiff establishes a prima facie case, the burden switches to the employer to articulate a legitimate nondiscriminatory reason for its action, and then back to the plaintiff to establish by a preponderance of the evidence that the employer's proffered reasons are pretextual. *Rufo v. Dave & Busters, Inc.*, 2007 WL 247891 (6th Cir Jan. 31, 2007) (citations omitted) Again, state law retaliation claims are analyzed in the same manner.

As part of the stipulation submitted to this Court, the parties agreed, "The alleged

16

'protected activity' which forms the basis of plaintiff's retaliation claim in his Amended Complaint is allegedly engaging in union activity and exercising his rights under the First Amendment to the United States Constitution."   Defendant asserts that these do not amount to protected activities under Title VII and/or the ADEA.  Plaintiff points to his Amended Complaint which asserts that he engaged in protected activity when he filed charges of discrimination with the OCRC.  Construing matters most favorably to plaintiff, the Court finds that he engaged in the protected activity of filing an OCRC charge.

Next defendant contends that plaintiff did not suffer an adverse employment action. For the following reasons, this Court agrees.

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White v. Burlington Northern and Santa Fe Railway Co.,* 364 F.3d 789 (6th Cir. 2005)  A *de minimis* employment decision is insufficient.  *Id.* Rather, an adverse employment action must work a "materially adverse change in the terms and conditions of [plaintiff's] employment." *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir.1999).

The Amended Complaint alleges the following adverse employment actions: the City brought false disciplinary charges against plaintiff which were later withdrawn; plaintiff was removed from the prestigious Diversity Committee; and plaintiff was unfairly scrutinized by his use of work hours to conduct Union activities.

With regard to the first assertion, the Division of Water maintained a written "computer-network- email-internet policy" to which plaintiff agreed to comply.  (Doc. 37

Exs. 16 and 17) The policy states that "external email regarding a Division of Water official position or policy on any matter should not be sent, unless authorized by the appropriate manager in the Division."  *Id.*   On March 2, 2006, plaintiff sent an email to the City's mayor attaching a memorandum he had written to complain about the Division of Water's refusal to allow plaintiff a handicap parking space. Plaintiff was issued a pre-disciplinary notification letter scheduling a pre-disciplinary conference to discuss the possible email policy violation. (Doc. 49 Ex. CC) Corrine Hunter, the City's Administrative Manager, conducted the pre-disciplinary conference on March 8, 2006, wherein plaintiff was afforded the opportunity to respond to the charge that he had violated the policy.  After the hearing, the City took no disciplinary action against plaintiff. (Corrine Hunter aff.)

Plaintiff argues that this amounts to an adverse employment action although he was not disciplined.  This Court disagrees because the pre-disciplinary notice and conference did not result in any significant change in employment status or benefits.  In *McMillian v. Potter,* 130 Fed.Appx. 793, 797 (6th Cir. 2005), for example, a proposed letter of warning in lieu of suspension did not meet the definition of an adverse employment action because no further disciplinary action was ever instituted against the plaintiff.  Nor did the letter involve salary or work hour changes or was it tantamount to a demotion.  "The only repercussion" the plaintiff could  identify was humiliation.  The court recognized that this is insufficient to satisfy the adverse employment action requirement.  The same is true here where plaintiff may have felt humiliated but did not suffer any salary or work hour changes.[3]

---

[3]     Plaintiff also contends that there is no City policy prohibiting an employee from contacting the mayor and that the City's attempt to discipline plaintiff stifled his First Amendment rights and had a chilling effect on plaintiff's speech.  Plaintiff,

Nor, the City contends, did plaintiff suffer an adverse employment action when he was removed from the Diversity Committee.  This Court agrees.

Angela Smith, the City's Assistant Commissioner for the Division of Water, avers that in 2006, the Division of Water retained an outside contractor to begin to help the Division achieve some of its workforce goals.  The contractor began the process by focusing on six subject areas- one of which was diversity.  Many of the subject areas were further broken down into smaller subgroups.  One of Smith's job duties in 2006 was to assist in coordinating and overseeing the Division of Water's efforts with the contractor.  All participants on the various committees and/or subcommittees were paid their regular hourly rate to attend the meetings, but did not receive any extra pay or benefits.  All of the meetings took place during regular work hours.  Participation on any of the committees and/or subcommittees was voluntary and did not increase or change any of the participants' regular job duties.  One of the subgroups created for the diversity subject area was a Diversity Task Group (Committee) to assist in various issues.  Elaine Woods chaired the committee.  (Angela Smith aff.)   Elaine Woods avers that the committee met four times in March and April 2006 for 1 ½ hour sessions.  Plaintiff did not apply to be a participant on the committee but was identified as a potential participant and invited to participate.  Plaintiff did participate on the committee but Woods did not obtain advance approval for his participation from Corrine Hunter.  (Elaine Woods aff.)  Hunter became aware of plaintiff's participation on the committee after he began his actual participation.  Hunter avers that due to operational needs, particularly concerns

─────────────

however, has not asserted a § 1983 claim for violation of his First Amendment rights.

regarding having all of the customer service telephones manned during regular business hours, she informed plaintiff that he could not participate on the committee.  (Hunter aff.)

Plaintiff's participation on the committee did not increase or alter his regular job duties.  (Hunter aff.)  Thus, plaintiff suffered no economic harm as a result of his removal. Plaintiff argues that it did amount to an adverse employment action.  Plaintiff avers that two days after his first meeting he was informed by Woods that he had been "red-lined."  Plaintiff understood red-lined to mean that he was being retaliated against for his prior actions against the City.  (pltf. aff.)

Plaintiff, however, points to no materially adverse change in the terms and conditions of his employment as a result of being removed from the committee.  Thus, there was no adverse employment action.

Finally, the Court agrees with defendant that its scrutinizing of plaintiff's Union activity did not amount to an adverse employment action.  Eric Myles, the City's Labor Relations Officer assigned to the Department of Public Utilities, avers that on December 19, 2005, the City's Department of Public Utilities issued a memorandum to all of the various Unions representing Department of Public Utilities employees regarding, among other things, the need for all non-full time Union representatives to maintain a log of time spent conducting union business. On May 31, 2006, Myles, sent an email to plaintiff and one other Union representative, Odis Catchings, indicating that they had not yet submitted their respective log of time spent conducting Union activities and that they each needed to submit a log. The City did not discipline plaintiff for failing to maintain the log or even convene a pre-disciplinary hearing regarding potential disciplinary activity against plaintiff for failing to maintain the

20

log.  (Eric Myles aff.)

Again, plaintiff points to no significant change in employment status.  Thus, this did not amount to an adverse employment action.

Having failed to demonstrate an adverse employment action, plaintiff does not satisfy a prima facie case of retaliation.  Summary judgment is warranted on this claim.

**(4) hostile work environment**

Defendant asserts that plaintiff fails to satisfy the prerequisites for his federal hostile work environment claim because neither the 2004 nor the 2006 OCRC/EEOC charges alleged such a claim.  Plaintiff appears to argue that these claims are reasonably expected to grow out of the charges of discrimination he filed.  In an abundance of liberality toward plaintiff, the Court will address the hostile work environment claim.

The stipulation submitted to this Court states, "Plaintiff's alleged hostile work environment claim in his Amended Complaint is a racial hostile work environment claim, sexual hostile work environment claim, age hostile work environment claim... and plaintiff's exercising his rights under the First Amendment to the United States Constitution hostile work environment claim."

Initially, it must be noted that a hostile work environment claim arises under Title VII which encompasses race and sex discrimination.  Additionally, the Sixth Circuit has held that hostile work environment is a viable theory under the ADEA.  *Crawford v. Medina General Hosp.,* 96 F.3d 830 (6th Cir. 1996).  However, plaintiff has not alleged § 1983 and, therefore, he has no claim for a hostile work environment based on the exercise of his First Amendment rights.

21

To establish a prima facie case of a hostile work environment under Title VII, plaintiff must show that: (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race or sex (4) the harassment created a hostile work environment; and (5) the employer is liable. *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999) ("The elements and burden of proof are the same, regardless of the discrimination context in which the claim arises.").

Satisfaction of the prima facie case under the ADEA requires that plaintiff show that (1) he is 40 years old or older; (2) he was subjected to harassment, either through words or actions, based on age; (3) the harassment had the effect of unreasonably interfering with his work performance and creating an objectively intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of the employer.

With regard to the requirement under Title VII and the ADEA that the harassment amounted to a hostile work environment, courts have made clear:

> Not every sexually hostile work environment, however, is actionable under Title VII. To fall within the purview of Title VII, the workplace must be permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.  We evaluate the severity of the harassment from the perspective of a reasonable person in the employee's shoes, considering the totality of the circumstances. Appropriate factors for consideration included, frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. In making this determination, we must consider the social context in which particular behavior occurs and is experienced by its target.

*Baugham v. Battered Women, Inc*., 2006 WL 3780295 (6th Cir. Dec. 20, 2006) (internal citations omitted)

22

The Amended Complaint alleges that plaintiff was subjected to a hostile work environment when the City brought false disciplinary charges against him which were later withdrawn; plaintiff was taken off the Diversity Committee; and plaintiff was unfairly scrutinized by his use of work hours to conduct Union activity.[4]  Additionally, when asked during discovery to specify other instances of hostile work environment, plaintiff identified the following:

> a.  Plaintiff filed a grievance for an alleged wrongful failure to promote him to Storekeeper.
>
> b.  Plaintiff filed a grievance for an alleged failure by the City to honor plaintiff's request for information under the collective bargaining agreement regarding a grievance.
>
> c.  Plaintiff filed a grievance regarding the City's alleged continued wrongful denial of a parking space to plaintiff.
>
> d.  Plaintiff was retaliated against for exercising his First Amendment rights when he sent correspondence to the Mayor's office regarding his denial of a parking space.
>
> e.  Plaintiff filed a grievance for an alleged wrongful taking away of a parking space.
>
> f.  Plaintiff filed a grievance for an alleged failure by the City to answer a grievance.
>
> g.  Plaintiff filed a non-grievance complaint for alleged wrongful attempts by City to discipline plaintiff for absence abuse.
>
> h.  Plaintiff filed a non-grievance complaint for alleged unsafe working conditions, harassment, and inference with union activities.
>
> i.  Plaintiff filed an unfair labor practice charge with SERB regarding the City's alleged failure to timely answer his grievances.

---

[4]  As discussed above, these are also the basis of alleged adverse employment actions.

j.  Plaintiff filed a non-grievance complaint for an alleged wrongful AWOL charge.

k.  Plaintiff filed a non-grievance complaint for an alleged wrongful 1-day suspension.

l.  Plaintiff filed a non-grievance complaint for an alleged wrongful failure to promote to him to Public Information Officer.

m.  Plaintiff filed a non-grievance complaint filed for alleged wrongful suspension for failure to report secondary employment.

n.  Plaintiff was accused of being AWOL.

(Doc. 49 Ex. AA) [5]

Plaintiff fails to show that the harassment complained of was based on race, sex, or age.   Plaintiff points to no evidence of words or actions based on race, sex, or age. Additionally, during his deposition, when questioned as to each alleged incident of harassment, plaintiff did not identify age as the basis of any.  (pltf. depo. 177-195)

Plaintiff testified at deposition that the incidents identified in a, c, e, i, and n, above, were instances of a sexually hostile work environment.  These incidents, however, appear to relate more to whether plaintiff was treated differently for the similar conduct of non-protected individuals and, therefore, are claims of discrimination rather than harassment.  In fact, plaintiff has claimed discrimination regarding the parking space.  Moreover, with regard to the failure to promote him to the position of Storekeeper, the evidence shows that two black males were awarded the position.  (Angela Smith aff.)  Thus, there could not have been sex discrimination or harassment based on sex.

---

[5]     Defendant points out that plaintiff did not sign and verify the answers as he was required to do so.

24

Plaintiff testified at deposition that the incidents identified in c, d and m, above, were instances of a racially hostile work environment.  Plaintiff fails to show, however, that these were incidents involving verbal or physical racial harassment.

For these reasons, summary judgment is appropriate as to this claim.

**(5) state law claims**

Having found that the federal claims are subject to dismissal, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims (negligent and intentional infliction of emotional distress, and slander and libel). *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

**<u>Conclusion</u>**

For the foregoing reasons, defendant's Motion for Summary Judgment is granted.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 3/22/07

25